IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHESTER RAY CRANK, | ) | CASE NO. 5:16CV2001 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| CHARMAINE BRACY, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Chester Ray Crank ("Petitioner" or "Crank") brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1, 24. Crank is detained at the Trumbull Correctional Institution, having been found guilty by a Stark County, Ohio, Court of Common Pleas jury of one count of aggravated murder, one count of aggravated burglary, one count of aggravated robbery, all with three-year firearm specifications, and one count of aggravated arson. *State v. Crank*, Case No. 2013CR1468 (Stark Cty. Common Pleas Ct., filed August 22, 2014). The trial court sentenced Crank to three years on each firearm specification, to be served consecutively, for a total of nine years; merged the aggravated murder, burglary and robbery counts and sentenced Crank to life in prison without the possibility of parole for aggravated murder; and sentenced him to eight years on the aggravated arson count, all terms to be served consecutively, for a total of life in prison without the eligibility of parole. Doc. 10-1, pp. 15-17.[1]

On July 28, 2016, Crank filed his Petition for Writ of Habeas Corpus setting forth six grounds for relief. Doc. 1, pp. 5-10. He filed an Amended Petition, with leave of Court, on August 17, 2017, adding two more grounds for relief. Doc. 24, pp. 12-13. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to

---

[1] Doc. page citations are to ECF Doc. page numbers.

Local Rule 72.2.  As set forth more fully below, Grounds Five and Eight are not cognizable and Crank's remaining grounds fail on the merits.  Thus, the undersigned recommends that Crank's Amended Petition for Writ of Habeas Corpus (Doc. 24) be **DENIED**.

## I.  Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

### A.  State Court Action

#### 1.  Underlying Facts

The following summary of underlying facts is taken from the opinion of the Stark County Court of Appeals, Fifth Appellate District of Ohio:

*A. The crime.*

{¶ 4} On Sunday, January 7, 2007, about 1:00 a.m., Canton City Firefighter, William Mobilian was dispatched to a home on Endrow Avenue N.E. in Canton in response to a structure fire call. He donned an oxygen mask for a "search and rescue" and entered the smoke filled home looking for any occupants.

{¶ 5} He went to one of the back bedrooms and found Bennie Angelo. Mr. Angelo was laying on the bed perpendicular and fully clothed with his feet on the floor.

{¶ 6} Mr. Angelo died of multiple gunshot wounds; one in the left forehead, a cluster of three in the left upper chest and one on the back of the left hand. Murthy found no exit wound for the one in the forehead; the one in the hand was an in and out and superficial and the three in the chest all exited in the left upper back.

{¶ 7} Mr. Angelo's hyoid bone in the throat was also fractured meaning that pressure was applied to the base of the neck until he could not breathe. There were contusions of the abdomen, meaning that force was applied to the abdomen. Mr. Angelo also had multiple blunt impact injuries caused by an impact from a fist, a foot or an object. There were abrasions to the left side of his neck and left leg. His body was covered with soot from the fire and first and second degree burns.

*B. The investigation.*

{¶ 8} Mr. Angelo's family cooperated and gave Detective George the lead investigator from the Canton Police Department information about the family, neighborhood and friends. Indeed, they circulated a poster offering a $15,000 reward for information leading to the arrest and conviction of the person or persons who killed their father. The poster generated many tips and George investigated all leads.

{¶ 9} Detective George learned from Michael Angelo, Mr. Angelo's son that his dad owned a Harrington and Richardson .32 caliber revolver, which he kept in his bedroom.

{¶ 10} In July, 2007, Ernest Schwab, who lived about a block away from Mr. Angelo's home on Endrow reported finding a wallet in the bushes by his yard while he was mowing the lawn.

¶ 11} The wallet contained Mr. Angelo's ID card from the VFW. Police officers arrived to search the area and found a brown leather holster in the vicinity by a large open field separating the Schwab's home from Mr. Angelo's home. The wallet and holster were also located in a straight line from the home Crank shared with his mother.

   *C. Alicia Culberson.*

{¶ 12} In May 2012, Alicia Culberson was in the Stark County Jail for a theft charge. She sent a "kite" that she wanted to talk with George about the Bennie Angelo killing. George went to the jail and took her statement. Culberson reported that in the Fall of 2011, she was at the home of her boyfriend, Robert Cassidy. Crank was there talking with Tony Tucker about the killing and robbery[.] Culberson heard the conversation: They broke into the home on Endrow, stole money, went back a third time, there was a struggle and that Crank shot Mr. Angelo and set the house on fire.

{¶ 13} In March 2013, Culberson was released from jail. George contacted her and asked her to contact Crank wearing a recording device. She agreed but was not successful in making a tape because the noise was too loud and the tape did not pick up the conversation.

   *D. Brenda Haywood.*

{¶ 14} In July 2012, Brenda Haywood contacted George about a homicide case involving Mr. Angelo. Haywood was cleaning cells at the jail and saw the Angelo reward poster. She memorized the phone number on the poster and called George when she got out of jail to tell him about the conversations she overheard. Haywood came to the Canton Police Department and agreed to a taped interview. Haywood knew Crank for several years as well as his mother, Billie. Indeed, Haywood would go "boosting" with Crank and his mother.

{¶ 15} Haywood went to a home on Fulton to make a drug transaction and was sitting at the end of a couch where Crank and Tony Tucker were sitting. Haywood observed Crank with tears in his eyes saying, "I don't know how long more [sic] I can take this." Crank

said he had "offed" some man. The name "Angelo" was mentioned and something about not giving up the government check money.

{¶ 16} Later, while "boosting" with Crank, he would start drinking and talk about killing a man who was a child molester and later during a road trip to New York after drinking, Crank told Haywood's minor son in her presence that he killed a child molester.

{¶ 17} Later, on a trip back from Mansfield, Crank again told Haywood he killed a child molester. Haywood confronted Crank and said he was a fucking liar; he killed him for money.

### E. Robert Cassidy.

{¶ 18} George never had any dealings with Crank and tried to follow up to find out where he was living. Then, he got a call from Rob Cassidy with information that "paralleled" what George was told by Culberson and Haywood. George still believed there were four persons involved in the killing and now believed that Crank was one of them. In January 2013, George heard from Robert Race. After speaking with him and others, Crank was still a suspect.

### F. Regina Lyons taped Crank saying, "I killed an old man."

¶ 19} Regina Lyons is Crank's first cousin and lived with him on and off during her life. In 2013, she lived with him and saw him almost every day until she went to stay at Stark County Regional Correction Center (SRCCC) for a forgery charge.

{¶ 20} In 2013, Crank asked her to "hang out" with him at a party. She agreed and his mother drove her to the party. Crank was there already drunk and started talking saying "I'm going to prison for the rest of my life, you know." When Lyons asked why, Crank replied that he killed somebody-shot somebody. Lyons knew whom he meant because of a prior conversation with Crank's brother, Casper—the Bennie Angelo murder.

{¶ 21} When Lyons went to SRCCC, she told someone who told one of the staff members. The staff member called Detective George and he came to see Lyons during her stay. Lyons confirmed her conversation with Crank and agreed to wear a digital recording device and tape future conversations with Crank. When Crank started drinking, he would freely talk about it. After some reluctance, Lyons agreed to wear the recording device.

{¶ 22} George would meet with Lyons prior to the times she was going out drinking with Crank. Lyons would put the recorder in her bra and turn it on when the opportunity arose and at the end of the evening call George and he would pick up the tape and transfer its contents to a CD. There were close to twenty hours of recordings. Lyons made three or four recordings in August 2013. Excerpts of the recordings were played during the testimony of Lyons. On the tapes, Crank can be heard saying, "I killed somebody, they can never prove it." "I took a life; I took his life a [sic] bitch. I let my homeys watch it. They want to tell on me." "This old man, right, I took his fucking life." "I fucked up, they

4

are going to send me to jail, I will go for the rest of my life, so you got to tell those motherfuckers I didn't do it. Where are my fingerprints? They can't prove it, where are my fingerprints, get them out of the house."

{¶ 23} Crank talked about the killing with Lyons at other times that were not recorded. He mentioned that the man he killed was named "Bennie," that he shot him and watched him bleed out, and how he enjoyed that. Another time, he said he had beaten him and that they burned the house down.

   *G. Mark Villegas.*

{¶ 24} Mark Villegas, a friend of Crank, heard that he was charged with the murder of Mr. Angelo. Villegas knew Crank when he lived across the street from him. Crank drank a lot and got emotional when he drank. He would start to cry and tell Villegas that he killed someone, went into a house on Endrow and killed the old man, Bennie. He said he was beaten and shot. He took some money and a gun. The conversations took place several times-at least six.

{¶ 25} Villegas thought Crank was lying but when he heard he was charged with the crime, he contacted Detective George. George visited him in prison, where Villegas was serving time for burglary, and gave him a written statement.

{¶ 26} Crank was interviewed by George on September 18, 2013. Crank denied any part in the killing and robbery.

*State v. Crank*, 2015 WL 2376007, at * 1-4 (Ohio Ct. App. May 18, 2015).

## 2. Procedural History

On November 13, 2013, the Stark County grand jury indicted Crank on one count of aggravated murder, R.C. § 2903.01(B), one count of aggravated burglary, R.C. § 2911.11(A)(1) and/or (A)(2), one count of aggravated robbery, R.C. § 2911.01(A)(1) and/or (A)(3), all with firearm specifications, and one count of aggravated arson, R.C. § 2909.02(A)(2). Doc. 8-1, pp. 3-14. Crank pleaded not guilty and entered a notice of alibi. Doc. 10-1, pp. 11, 13.

The jury found Crank guilty on all counts in the indictment. Doc. 10-1, p. 14. At sentencing, the trial court sentenced Crank to three years on each firearm specification, to be served consecutively, for a total of nine years; merged the aggravated murder, burglary and robbery counts and sentenced Crank to life in prison without the possibility of parole for

aggravated murder; and sentenced him to eight years on the aggravated arson count, all terms to be served consecutively, for a total of life in prison without the eligibility of parole.  Doc. 10-1, pp. 15-17.

### A. Direct Appeal

On September 18, 2014, Crank, through new counsel, filed a notice of appeal with the Ohio Court of Appeals.  Doc. 10-1, p. 19.  In his brief, he raised the following assignments of error:

> 1. Appellant's convictions were against the manifest weight and sufficiency of the evidence.
>
> 2. Appellant's Sixth Amendment right to confront wi[t]nesses against him was violated when the trial court permitted the admission of hearsay statements.
>
> 3. The trial court abused its discretion when it overruled defense counsel's motion for a mistrial.
>
> 4. Appellant was denied his right to a fair trial due to the cumulative error that occurred during his trial.
>
> 5. Appellant was denied his rights to due process and of assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution, because his trial counsel provided ineffective assistance.
>
> 6. Appellant was improperly sentenced when the trial court sentenced him to multiple consecutive gun specifications arising from one continuous course of conduct.

Doc. 10-1, p. 21.  On May 18, 2015, the Ohio Court of Appeals affirmed the trial court's judgment.  Doc. 10-1, pp. 87-117.

On September 10, 2015, Crank, *pro se*, filed a notice of appeal and leave to file a delayed appeal to the Ohio Supreme Court.  Doc. 10-1, pp. 118-122.  Crank asserted that he was unable to file a timely appeal because he did not receive the Ohio Court of Appeals' time-stamped copy of judgment until August 27, 2015.  Doc. 10-1, p. 121.  On October 28, 2015, the Ohio Supreme Court denied Crank's motion for delayed appeal and dismissed the case.  Doc. 10-1, p. 157.

**B. Application to Reopen pursuant to App. R. 26(B)**

On August 17, 2015, Crank, *pro se*, filed an Application to Reopen pursuant to Ohio App. R. 26(B).  Doc. 10-1, p. 158.  As a basis for reopening the appeal, Crank argued that his appellate counsel was ineffective for the following reasons:

> 1. Appellant counsel was ineffective for failing to argue Assignment of Error No. 6, as stated in the Table of Contents of his Appellant's Brief in violation of the Defendant's Sixth Amendment and Fourteenth Amendment rights to the United States Constitution; Section 10 Article I of the Ohio Constitution. The Assignment of Error was stated as follows:
>> Appellant was improperly sentenced when the trial court sentenced him to multiple consecutive gun specifications arising from one continuous course of conduct.
>
> 2. Appellant Counsel was ineffective for not raising the State's Misconduct for soliciting and eliciting false testimony from the state's witnesses and coercing Appellant to make false statements—via intoxication—violating Appellant's Due process of Law in violation of the Fifth and Fourteenth Amendments to the United States Constitution; Section 16, Article I of the Ohio Constitution.
>
> Appellate counsel was ineffective for failing to argue Misconduct of Law Enforcement officer to include the prosecutor in this case for coercing the Appellant into making false statements while intoxicated denying the Appellant the right to a fair trial and Due Process of Law in violation of the Fifth and Fourteenth Amendments to the United States Constitution; Section 16, Article I of the Ohio Constitution.
>
> 3. Appellate Counsel was ineffective for failing to raise any defense for the issue of aiding and abetting when the State failed to prove a principal offender violating Appellant's right to a fair trial and due process of Law in violation of the Fifth Amendment and Fourteenth Amendment to the United States Constitution; Section 16, Article I of the Ohio Constitution.

Doc. 10-1, pp. 161-169.  On September 29, 2015, the Ohio Court of Appeals rejected Crank's claims and denied his application for reopening.  Doc. 10-1, pp. 180-188.

On November 9, 2015, Crank filed an appeal with the Ohio Supreme Court, asserting the same assignments of error.  Doc. 10-1, p. 192.  On January 20, 2016, the Ohio Supreme Court declined to accept jurisdiction.  Doc. 10-1, p. 232.

**C. State Post-conviction Petition**

7

On April 23, 2015, Crank filed a petition to set aside the judgment of conviction or sentence with the trial court.  Doc. 10-1, p. 233.  He also filed a motion for appointment of counsel and expert assistance.  Doc. 10-1, p. 262.  As a basis for his petition, Crank raised the following claims:

1. Petitioner was denied the effective assistance of counsel as counsel failed to investigate and bring proper objections based on the facts that the investigation would have uncovered during the trial proceedings related to the truthfulness of the witness testimonies. This was a violation of his Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 & 16 of the Ohio Constitution.

> Petitioner has evidence outside the record that shows that the testimony of state's witness Robert Race was false. The witness testified that Petitioner "confessed" to certain actions related to the crime that was committed in Petitioner's case. The dates he gave for the alleged confession were very specific and related to definite events and time periods.

> Petitioner can show by clear and convincing evidence that he was incarcerated on unrelated charges in case no. 2012 CRB 04538 during the time that he supposedly "confessed" to Mr. Race, which was January of 2013. This shows the testimony given by Mr. Race is false and consistent with perjury as related to the facts claimed at trial and Mr. Race's testimony is unreliable as related to the conviction of the Petitioner.

2. In the present case, Petitioner was deprived of his right to the effective assistance of counsel...

> The Sixth Amendment guarantees a defendant the right to call witnesses in his favor. *Indiana v. Edwards*, 554 U.S. 164, 188, 128 S.Ct. 2379 (2008). Petitioner['s] trial counsel failed to call any witnesses to testify on behalf of his client or present a defense that his client had nothing to do with the aggravated burglary, aggravated robbery, aggravated arson, and the shooting death of the victim in this case that resulted in the aggravated murder.

3. Petitioner was denied the effective assistance of counsel and Due Process as counsel failed to investigate for alibi evidence which would absolve Petitioner of the crime and provide him with an affirmative defense. *Strickland*, supra, *Melendez-Diaz v Massachusetts*, 557 U.S. ___, 129 S.Ct. 2527.

> Petitioner was housed in a halfway house, the Phoenix House, during the time the murder in this case was committed. As the murder was committed after the curfew for the half-way house, Petitioner could not have committed the crime and made roll call/count on the day of the murder. This goes to alibi evidence that was an affirmative defense that was omitted at trial.

Doc. 10-1, pp. 234-240.  On February 23, 2016, the trial court denied Crank's petition and requests for counsel and expert assistance and granted the state's motions to dismiss and motion for summary judgment.  Doc. 10-1, pp. 288-291.

On March 1, 2016, Crank appealed to the Ohio Court of Appeals, raising the following assignments of error:

> 1. The Defendant-Appellant received ineffective assistance of counsel in violation of his Due Process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.
>
> 2. The Defendant-Appellant was denied Due Process under the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution, when the trial court inappropriately denied his post-conviction petition.

Doc. 10-1, pp. 292, 298.  On September 23, 2016, the Ohio Court of Appeals rejected Crank's claims of ineffective assistance of trial counsel and affirmed the judgment of the trial court.  Doc. 10-1, pp. 360-371.

On October 28, 2016, Crank filed an appeal with the Ohio Supreme Court.  Doc. 10-1, p. 372.  He raised the following propositions of law in support of jurisdiction:

> 1. Is an appellant denied due process and effective assistance of counsel when counsel fails to investigate and call witnesses that are critical to the defense?
>
> 2. Is an appellant denied due process and effective assistance of counsel when counsel fails to investigate and provide alibi evidence?

Doc. 10-1, p. 377, 382.  On March 15, 2017, the Ohio Supreme Court declined jurisdiction pursuant to S.Ct. Prac.R. 7.08(B)(4).  Doc. 25-1.

### D. Federal Habeas Petition

On July 28, 2016, Crank, *pro se*, filed his Petition for a Writ of Habeas Corpus.  Doc. 1. He listed the following grounds for relief:

**Ground One:** Petitioner received ineffective assistance of appellate counsel in violation of his Due Process rights under the Sixth and Fourteenth Amendments to the U.S. Constitution.

      **Supporting Facts:** Appellate counsel failed to provide the appellate court with argument supporting Assignment of Error No. 6 in his Appellant's Brief, that Petitioner was improperly sentenced when the trial court sentenced him to multiple consecutive gun specifications arising from one continuous course of conduct.

      Appellate counsel failed to argue that the State committed obvious misconduct on the part of the Detective for illegally directly or indirectly getting the Petitioner drunk in order to get him to make statements portrayed as a confession to things that he did not do.

      Appellate counsel failed to raise on appeal the issue of aiding and abetting when the state failed to prove a principal offender.

**Ground Two:** Petitioner's Convictions were Against the Sufficiency of the Evidence, in violation of his Due Process Rights under the Sixth and Fourteenth Amendments to the U.S. Constitution.

      **Supporting Facts:** There was no direct physical evidence linking Petitioner to any of his convictions. The State's case was built largely around the cooperation of four convicted felons.

**Ground Three:** Petitioner's Sixth Amendment Right to Confront Witnesses against Him was Violated when the Trial Court Permitted the Admission of Hearsay Statements.

      **Supporting Facts:** The trial court overruled Petitioner's trial counsel's objection when Detective Victor George testified that he received information from Robert Cassidy that connected Petitioner to the death of Bennie Angelo.

**Ground Four:** Petitioner's Due Process Rights under the Sixth and Fourteenth Amendments to the U.S. Constitution were Violated when the Trial Court Abused Its Discretion when It Overruled Defense Counsel's Motion for a Mistrial.

      **Supporting Facts:** Petitioner's trial counsel moved for a mistrial after the prosecution's witness testified that she confronted Petitioner with photos where he had beaten his mother. Counsel made the motion for mistrial because the trial court had previously granted his motions in limine concerning Petitioner's prior convictions and testimony about his character. The trial court denied the motion.

**Ground Five:** Petitioner's Due Process Rights under the Sixth and Fourteenth Amendments to the U.S. Constitution were Violated when His Right to a Fair Trial was Denied Due to Cumulative Error that Occurred During Trial.

      **Supporting Facts:** Petitioner maintains that he was denied a fair trial under the cumulative effect of the errors put forth in Grounds Three and Four herein.

**Ground Six:** Petitioner was Denied His Rights to Due Process and of Assistance of Counsel as guaranteed by the Sixth and Fourteenth Amendments of the U.S. Constitution because his Trial Counsel Provided Ineffective Assistance.

> **Supporting Facts:** Petitioner was appointed two attorneys as counsel for his defense. The record indicates that his attorneys were not pursuing the same strategy for his defense. Trial counsel kept belaboring the issue of whether Detective George ever had anyone confess to a crime that he or she did not commit. Appellate counsel also made reference to the fact that Petitioner was incarcerated.

Doc. 1, pp. 5-10.  On August 17, 2017, Crank filed an Amended Petition adding the following

grounds:

**Ground Seven:** Petitioner did not receive the effective assistance of counsel in violation of his right to Due Process under the Fifth and Fourteenth Amendments to the U.S. Constitution.

> **Supporting Facts:** Counsel for Petitioner failed to provide effective assistance in his defense with regard to the following issues:

1) Counsel failed to investigate and object to false statements made by a State's witness. A witness for the State testified that Petitioner told him about the crime at a very specific time related to definite events. Petitioner was incarcerated at the time the witness was alleged to have heard his "confession." Minimal investigation would have shown that the wit nesses testimony was impossible.

2) Defense counsel failed to call witnesses for the defense that could provide exculpatory testimony. Defense counsel was told about these witnesses, but failed to interview them prior to trial and refused to call them to the stand. Additionally, no witness was ever called from the half-way house where Petitioner was under curfew at the time [of the] crime.

3) Defense counsel failed to obtain or call a witness in relation to Petitioner's level of state-sponsored, informant-induced intoxication during the time he was allegedly "confessing" to the crimes in this case. The State picked selective statements from Petitioner while in a drunken stupor and twisted them to represent the crime in the instant case. Petitioner was obviously heavily intoxicated-slurring his words, crying & had blacked out several times-and the level of intoxication relates to the reliability of any statements made by Petitioner through the underhanded tactics of the State.

4) Defense counsel never investigated the fact that Petitioner was under curfew while residing at a halfway house during the time of the crimes in this case. The records would show that Petitioner was in the half-way house at the time of the crime, which was past the curfew time of the half-way house. This deprived Petitioner of an affirmative defense.

**Ground Eight:** Petitioner was denied his right to Due Process under the Fifth and Fourteenth Amendments to the United States Constitution when the trial court improperly denied his post-conviction petition.

　　**Supporting Facts:** Petitioner's post-conviction petition was denied under two different reasonings. The first reason for denial was that the petition "was not supported by evidentiary material." The assertions in the filing were related to evidence that was unobtainable by Petitioner due to his incarceration, so the Petitioner properly filed a Motion for Expert Assistance in order to obtain the required evidence. The operative facts presented by Petitioner would have a reasonable probability of changing the outcome of the proceedings. The trial court denied the motion, then denied the petition due to lack of evidence that the trial court prevented Petitioner form obtaining. This is a legal "Catch 22." Petitioner's petition was denied due to his inability to afford or implement proper investigatory means to obtain evidence, prejudicing him due to his indigence. The second reason for the denial of the petition was that the trial court found Petitioner unable to raise the issue of the ineffective assistance of counsel on the petition due to his having raised ineffective assistance of counsel on his direct appeal. The claim of ineffective assistance of counsel in the post-conviction petition was related to issues and evidence de hors the record, making the issue impossible to have been presented on direct appeal and immune from the alleged *res judicata* bar.

Doc. 24, pp. 12-13.  On March 10, 2017, Respondent filed a Return of Writ (Doc. 10), a

Supplemental Return of Writ on October 2 (Doc. 25) and a Reply on January 31, 2018 (Doc. 28).

In her filings, Respondent argues that Grounds Five and Eight are not cognizable and the

remaining grounds fail on the merits.  Doc. 10, pp. 18-33; Doc. 25, pp. 18-25; Doc. 28.

## II. Law

### A.  Standard of Review under AEDPA

　　In order to obtain habeas relief under 28 U.S.C. § 2254(d), a petitioner must show either

that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable

application of, clearly established federal law as determined by the United States Supreme Court

("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceedings

("unreasonable application" clause).  *Id.*

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principals and standards flowing from Supreme Court precedent.  *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard.  *Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).  "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.

### III. Claims Analysis

#### A. Ground One

In Ground One, Crank argues that he received ineffective assistance of appellate counsel because counsel (1) failed to advance an argument in support of his assertion on appeal that he was improperly sentenced when the trial court sentenced him to multiple firearm specifications that arose from one continuous course of conduct; (2) failed to argue that the state committed misconduct for directly or indirectly getting him drunk in order to get him to confess; and (3) failed to raise on appeal the impropriety of "aiding and abetting."  Doc. 24, p. 6.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of appellate counsel claims.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000). A petitioner must show that appellate counsel was objectively unreasonable and a reasonable probability that, but for counsel's unreasonable failure, he would have prevailed on his appeal. *Id*. (citing *Strickland*, 466 U.S. at 687-691, 694).  Upon federal habeas review, there is a double layer of deference applied: to counsel, under *Strickland*, and to the state court of appeals' decision on the merits of that claim, under AEDPA.  *Kelly v. Lazaroff*, 846 F.3d 819, 832 (6th Cir. 2017) (citing *Burt v. Titlow*, 134 S.Ct. 10, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

#### 1. Crank's first sub-claim fails on the merits because he cannot show that he was prejudiced

Crank's first sub-claim in Ground 1 is that his appellate counsel failed to brief the issue of his sentencing on direct appeal.  Doc. 24, p.6. The Ohio Court of Appeals considered this claim and rejected it when it denied his Rule 26(B) Application.  Doc. 10-1, pp. 184-186.  After

setting forth the standard in *Strickland* (Doc. 10-1, pp. 181-182) the Ohio Court of Appeals

explained,

> In his first proposed assignment of error, appellant argues that his appellate counsel was ineffective because he did not argue that the trial court erred in imposing multiple, consecutive sentences for the gun specifications in this case.
>
> R.C. 2929.14(B)(1)(g) serves as an exception to the rule that multiple firearm specifications must be merged for purposes of sentencing when the predicate offenses were committed as a single criminal transaction, and provides:
>
> > If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications. (Emphasis added.) [Sic]
>
> In the instant case, the record is clear that appellant was convicted of multiple felonies, to wit: one count of aggravated of murder, one count of aggravated robbery and one count of aggravated burglary. The trial court was required by R.C. 2929.14(B)(1)(g) to sentence appellant to the two most serious firearm specifications that accompanied his felony convictions for complicity to murder and complicity to aggravated burglary or complicity aggravated robbery.
>
> "[R]egardless of whether [a defendant's] crimes were a single transaction, when a defendant is sentenced to more than one felony, including [murder] and [aggravated robbery and/or aggravated burglary], the sentencing court 'shall impose' the two most serious gun specifications." *State v. Isreal*, 12th Dist. Warren No. CA2011-11-115, 2012-Ohio-4876, ¶ 71. *See also State v. Ayers*, 12th Dist. Warren No. CA2011-11-123, 2013-Ohio-2641, ¶ 20-25; *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 32-34. A*ccord, State v. Cobb*, 5th Dist. Stark No. 2014CA00218, 2015-Ohio-3661, ¶ 35.
>
> Accordingly, we find that the issue asserted by appellant in his first proposed assignment of error raises "no genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal***" *State v. Smith* 95 Ohio St.3d 127, 2002-Ohio-1753.

Doc. 10-1, pp. 184-186.

Crank argues that, when the trial court found that all three offenses were allied and

merged them, he was only "convicted" of aggravated murder and the attendant gun specification

and, therefore, could not be sentenced for gun specifications on the other two offenses that he was not convicted of. Doc. 26, pp. 6-7. In reply, Respondent asserts that Crank cites no legal authority for his position and reasserts its argument that a state court's interpretation of state sentencing laws binds federal habeas courts. Doc. 28, pp. 5-6.

When allied offenses are implicated, "a 'conviction' consists of a guilty verdict *and* the imposition of a sentence or penalty." *State v. Whitfield*, 922 N.E.2d 182, 185 (Ohio 2010) (emphasis in original). "When a defendant has been found guilty of offenses that are allied offenses, R.C. 2941.25 prohibits the imposition of multiple sentences....Therefore, a trial court must merge the crimes into a single conviction and impose a sentence that is appropriate for the offense chosen for sentencing." *State v. Damron*, 950 N.E.2d 512, 515 (Ohio 2011) (internal citation omitted); *see also State v. Swiergosz*, 965 N.E.2d 1070, 1083 (Oh. Ct. App. 2012) (allied offenses are merged before sentencing and the defendant is convicted of only one offense). The trial court in Crank's case found that Count 1 aggravated murder, Count 2 aggravated robbery, and Count 3 aggravated burglary were allied offenses of similar import and merged Counts 2 and 3 into Count 1 and sentenced Crank on Count 1. Doc. 10-1, pp. 15-16. Therefore, Crank was "convicted" of Count 1, aggravated murder; he was not convicted of Counts 2 or 3.

Counts 1, 2 and 3 each had 3-year firearm specifications. The trial court did not merge the firearm specifications into Count 1 as it did with the underlying offenses. Instead, it sentenced Crank on Count 1 (life in prison without parole) and sentenced him to three years on each firearm specification for Counts 1, 2 and 3 (for a total of nine years). In other words, it merged the underlying offenses but did not merge the attendant firearm specifications.

The statute the Ohio Court of Appeals relied upon, R.C. 2929.14(B)(1)(g), provides,

If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape,...

Crank was convicted of aggravated murder and he was convicted of aggravated arson.  Doc. 10-1, p. 16.  Thus, he was convicted of two felonies, one of which was aggravated murder, an enumerated offense.  The statute continues,

> ...and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section [i.e., a firearm specification] *in connection with two or more of the felonies*,.... (Emphasis added)

Crank's aggravated arson conviction did not include a firearm specification.  See Doc. 10-1, p. 8.  Therefore, Crank was not convicted of a specification in connection with two or more felonies.  The statute, by its plain language and the Ohio Supreme Court's interpretation of the word "conviction," does not apply to Crank.  *See also State v. Jacobs*, 2013 WL 1614960, at *15 (Oh. Ct. App. March 28, 2013) (R.C. 2929.14(D)(1)(g), now 2929.14(B)(1)(g), does not apply when the felony convictions are merged as allied offenses and the defendant is only convicted of one applicable felony offense)[2]; *Volpe v. Trim*, 708 F.3d 668, 697 (6th Cir. 2013) (a federal court is bound by a state court's construction of that state's statutes when assessing legislative intent).  Accordingly, the Ohio Court of Appeals appeared to have erred when it found that R.C. 2929.14(B)(1)(g) applied to Crank and that he was properly sentenced under that statute.

However, Crank's claim fails because he cannot show that he was prejudiced by appellate counsel's failure to raise this issue on appeal, as he is required to do under *Strickland*.  *Smith*, 528 U.S. at 285.  Respondent contends that, even if an alleged sentencing error resulted in Crank being sentenced to six more years than he should have been sentenced to on the gun specifications, he was also sentenced to life without the possibility of parole; thus, the outcome of Crank's sentence would not have been different.  Doc. 28, p. 6.  The undersigned agrees.  *See Glover v. U.S.*, 531 U.S. 198, 203 (2001) (under the prejudice prong of a *Strickland* analysis for

---

[2] *See also State v. Roper*, 2013 WL 2368766, at *3 (Oh. Ct. App. May 29, 2013) ("[I]t is impermissible to sentence an offender for a specification when the underlying offense upon which the specification is predicated has merged with another allied offense.").

ineffective assistance of counsel, "any amount of actual jail time has Sixth Amendment

significance."); *Phillips v. White*, 851 F.3d 567, 582 (6th Cir. 2017) ("Actual prejudice [for

purposes of *Strickland*] also exists when there is a reasonable probability that petitioner would

have avoided even 'a minimal amount of additional time in prison' were it not for counsel's

performance at sentencing[,]" quoting *Glover*).  Here, the sentencing error on the gun

specifications did not cause Crank to have any more actual jail time because he had been

sentenced to life without the possibility of parole on the aggravated murder count.  Moreover,

under state law, his challenge would have been moot for this reason.  *See State v. Chavez*, 2013

WL 5773505, at *8 (Oh. Ct. App. Oct. 24, 2013) (explaining that Ohio courts consider

challenges to consecutive sentences moot when the defendant had been sentenced to the death

penalty or life without the possibility of parole).  Thus, Crank does not show that, but for

appellate counsel's alleged error, he would have prevailed on appeal.  *Smith*, 528 U.S. at 285.

Crank's first sub-claim in Ground One fails on the merits.

## 2. Crank's second sub-claim fails on the merits

Crank's second sub-claim in Ground One is that his appellate counsel was ineffective for

failing to argue that the state committed misconduct for directly or indirectly getting him drunk

in order to get him to confess.  Doc. 24, p. 6.  The Ohio Court of Appeals considered and

rejected that contention as follows:

> Evidence of intoxication, without more, does not compel the conclusion that a statement
> to police was made involuntarily and must be suppressed.  *State v. Stewart* (1991), 75
> Ohio App.3d 141, 147, 598 N.E.2d 1275; *State v. Christopher* (April 27, 1989),
> Montgomery App. No. 10870.  The standard is whether, by reason of intoxication or
> other factor, defendant's "will was overborne" or whether his statements were the
> "product of a rational intellect and a free will."  *Townsend v. Sain* (1963), 372 U.S. 293,
> 307, 83 S.Ct. 745, 754.  In that case, a police physician had given Townsend a drug with
> truth-serum properties.  372 U.S., at 298-299, 83 S.Ct., at 749-750.  The subsequent
> confession, obtained by officers who knew that Townsend had been given drugs, was
> held involuntary.

The evidence in the case at bar revealed that Crank was already drunk before he had contact with any of the state's witnesses.  *Crank I*, ¶20; ¶24.  The jury heard the circumstances surrounding each witnesses['] meeting with appellant, the behavior of the witness and the behavior of Crank.  In the case at bar, the record is devoid of coercive police activity.  *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515 (1986).

Accordingly, we find that the issue asserted by appellant ... raises "no genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal[.]"  *State v. Smith* 95 Ohio St.3d 127, 2002-Ohio-1753.

Doc. 10-1, pp. 186-187.

### a. Crank does not demonstrate that the Ohio Court of Appeals' factual finding was unreasonable

Crank argues that the Ohio Court of Appeals incorrectly stated that he was already drunk before he had contact with any of the state's witnesses.  Doc. 26, p. 9, 11.  He also argues that the state committed misconduct by getting him drunk "in order to get him to make statements portrayed as a confession to things that he did not do."  Doc. 24, p. 6; Doc. 26, pp. 9-11.  Under AEDPA, "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Burt v. Titlow*, -- U.S. --, 134 S.Ct. 10, 15 (2013) (citing 28 U.S.C. § 2254(d)(2)).[3]  "The prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.'"  *Id*. (citing § 2254(e)(1)).  A state court's factual determination is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance."  *Id*. (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

In support of his claim that the Ohio Court of Appeals incorrectly determined that he was already drunk before he had contact with any of the state's witnesses and his further assertion

---

[3]  The Supreme Court has not decided whether the "unreasonable" standard in 28 U.S.C. § 2254(d)(2) applies or the "clear and convincing evidence" standard in 28 U.S.C. § 2254(e)(1) applies in a challenge to a state court's factual determination.  *See Wood v. Allen*, 558 U.S. 290, 300-301 (2010); *McMullan v. Booker*, 761 F.3d 662, 670 (6th Cir. 2014).  Crank's challenge to the state court's factual determination fails to meet either standard.

that the state "directly or indirectly" got him drunk to get a confession (Doc. 24, p. 6), Crank

identifies the following testimony from witness Regina Lyons, explaining the process by which

she would obtain a recording device from the police to record Crank:

> Q: Physically what was the process when you would meet with Detective George, what would happen then?
> A: I would meet with him. We would discuss things. He would sometimes give me money to buy the liquor.
> Q: Okay. Why was it that you thought that you would need to buy liquor?
> A: Because when Chester and I talked, it was all about drinking.  We drink. We only hung out when we drink.
> Q: Okay. And so you would meet with him, you would talk, sometimes he gave you money to buy alcohol?
> A: Yes. Can I— I'm sorry.
> Q: What did he do? How would you get the recorder?
> A: He would give it to me at that time, showed me how to work it.  Turn it on and off.

Doc. 26, p. 9; Doc. 10-4, pp. 171-172.

Respondent argues, "Crank does not cite to any part of the record which demonstrates

that the Detective encouraged or directed Lyons to get Crank drunk or pay for Crank's liquor (as

opposed to hers)."  Doc. 28, p. 11.  The undersigned agrees.  Lyons' testimony above does not

establish that (1) Lyons encountered Crank before he was drunk and/or (2) Lyons used the

money from Detective George to buy liquor to get Crank drunk.  And nothing in the balance of

Lyons' testimony establishes Crank's allegation either.  See Doc. 10-4, pp. 138-220 (Lyons'

testimony).  The only time Lyons describes a full encounter with Crank was the first time she

heard him confess to killing a man (prior to her going to the police and wearing a recording

device) and Lyons stated that Crank was already intoxicated when she arrived at the house where

he was drinking.  Doc. 10-4, p. 152.  Thus, Crank has not established that the Ohio Court of

Appeals' decision was based on an "unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."  *Burt*, 124 S.Ct. at 15 (quoting 28 U.S.C. §

2254(d)(2)).

**b. Crank does not demonstrate that the Ohio Court of Appeals'
legal determination was unreasonable**

To recap, the Ohio Court of Appeals denied Crank's ineffective assistance of appellate
counsel claim that was based on counsel's failure to raise on direct appeal a claim that the state
committed misconduct because the state directly or indirectly got him drunk in order to obtain a
confession.  Doc. 10-1, p. 186.  Crank contends that appellate counsel was ineffective for failing
to raise on direct appeal an argument that his confession was involuntary because it was a
product of coercive police activity based on Crank's claim that the police gave Lyons money to
get him drunk to obtain a confession.  Doc. 24, p. 6; Doc. 26, p. 13.[4]  However, as explained
above, Crank cannot overcome the Ohio Court of Appeals' factual determination that Crank was
already drunk when the state witnesses encountered him and that there was no evidence of police
coercion.  *See Cullen*, 563 U.S. at 183 (Under § 2254(d)(1) federal habeas courts are limited to
the set of facts that were before the state court).

The Ohio Court of Appeals denied Crank's claim, explaining, "In the case at bar, the
record is devoid of coercive police activity.  *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515
(1986)."  Doc. 10-1, p. 187.  The Ohio Court of Appeals correctly observed that evidence of
police coercion is necessary for a finding that a confession is involuntary.  *See Connelly*, 479
U.S. at 167 ("We hold that coercive police activity is a necessary predicate to the finding that a
confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth
Amendment."); *Hill v. Anderson*, 881 F.3d 483, 503, 507 (6th Cir. 2018).  The state Court of
Appeals then applied the *Strickland* standard and determined that appellate counsel was not
ineffective for failing to raise a claim on direct appeal of state misconduct resulting in an
involuntary confession because there was no evidence of police coercion, a predicate for an

---

[4]  Elsewhere in his Traverse, Crank argues that trial counsel was ineffective for failing to have an expert witness
testify as to his level of intoxication when he made the statements (e.g., Doc. 26, pp. 10-11), a separate issue Crank
raises and the undersigned considers in Ground 7, *infra*.

involuntary confession.  Doc. 10-1, pp. 186-187.  In other words, appellate counsel was not ineffective for failing to raise a claim on direct appeal that lacked merit.  It cannot be said that the state Court of Appeals' decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington*, 562 U.S. at 103.

Crank's second sub-claim in Ground One fails on the merits.

### 3. Crank's third sub-claim fails on the merits

Finally, with respect to Crank's third argument, the Ohio Court of Appeals found that Crank could not show he was prejudiced by appellate counsel's failure to raise on appeal a defense to "aiding and abetting."  Doc. 10-1, p. 187.  The court observed that Crank was not convicted of aiding and abetting and was instead convicted as the principal offender.  Doc. 10-1, p. 187.  Crank does not explain how the court's finding was an unreasonable application of *Strickland*.  Accordingly, the third sub-claim in Ground 1 fails on the merits.

### B. Ground Two fails on the merits

In Ground Two, Crank argues that his convictions are against the sufficiency of the evidence in violation of his Due Process rights.  Doc. 24, p. 7.  He submits that there was no direct evidence linking him to the crime and complains that the state's case was "built largely around the cooperation of four convicted felons."  Doc. 24, p. 7.

In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Under this standard, deference is due the jury's determination.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  The standard is not whether the trier of fact made the correct guilt

or innocence determination but, rather, whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, in making a determination as to sufficiency of the evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury."  *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).  "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt."  *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies.  *Brown*, 567 F.3d at 205; *Snyder v. Marion Corr. Inst., Warden*, 608 Fed. App'x 325, 327 (6th Cir. 2015) (indicating that, where a petitioner's "claims arise in the context of a § 2254 petition, [the court's analysis] must be refracted through yet another filter of deference") (citing *Coleman v. Johnson*, 566 U.S. 650 (2012), which reaffirmed that sufficiency of the evidence claims under *Jackson* "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference").  Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable."  *Brown*, 567 F.3d at 205 (emphasis in original); *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

The Ohio Court of Appeals considered Crank's sufficiency claim:

{¶ 37} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*.

*       *       *

23

{¶ 40} There is no dispute in the case at bar that a shooting had in fact occurred. Crank does not contest that an aggravated murder, aggravated burglary, aggravated robbery, and an aggravated arson occurred in the case at bar. Crank also does not contest that a firearm was used during the commission of those offenses. Crank's argument focuses on his contention that there was insufficient evidence to identify him as the assailant in the shooting of Mr. Angelo and in the other offenses charge in the indictment.

{¶ 41} The jury heard Crank himself confess to the killing of Mr. Angelo. In tape recordings made by his cousin, Regina Lyons. Crank said "I killed somebody ... yes I did, yes I did, I promise you they can never prove it .... yep, yep, took his fucking life, took him like a bitch, ....let my homies watch it ... I did it for a reason, that motherfucker touched a kid ... This old man right I took his fucking life ... the man was gonna buy some kids, I took care of him ... got away with it bro ... I'm a murderer man.... I'm dirt ... I killed somebody.... I fucked up my life, I'm a killer.... We got away with it ... I got away with it ... You gonna tell on me ... I'm the one that did what I did ... they can't do nothin ... I made that much money ... old man child molester.... I need to be locked up. State's Ex 27, 3T. at 660–665.

{¶ 42} Crank gave his cousin other details-he told Lyons he went in to rob, shot "Bennie[,]" beat him, watched him bleed out and enjoyed that. He said he burned the house down and watched it burn. He found the gun under the mattress and showed Lyons where he threw it. He told Lyons there were reward posters everywhere.

{¶ 43} Alicia Culberson heard Crank say he broke into a home on Endrow, stole money off the man, shot him and "got the house on fire."

{¶ 44} Brenda Haywood offered similar testimony. She heard Crank say he "offed some man." The name Angelo was mentioned. Later, after Crank had been drinking, he told Haywood he killed a man and "rid the world of a child molester." In a later conversation, Crank said he killed an old man but would not be caught because he did the perfect crime.

{¶ 45} Crank made similar confessions to Mark Villegas. Crank said he killed someone. He told Villegas that he went into a house on Endrow and killed the old man, Bennie. Crank said he was beaten and shot and that he took some "stuff"- a little bit of money and a gun. Crank told Robert Race that he got away with murder before. When Race told him he was crazy, Crank asked him if he ever heard about the guy over by the school. Race asked him if he meant the veteran and he replied yes. "We got away with it and we took jars of money and some cash off the old man."

{¶ 46} Crank rests his sufficiency challenge on attacks on the credibility of the witnesses who were convicted felons. Crank notes that the state did not produce any forensic or physical evidence linking him to the scene of the killing and robbery. No blood or DNA from Crank was found; no fingerprints of Crank were found and no items were found that would link him to the crimes.

{¶ 47} If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997). "Circumstantial evidence and direct evidence inherently possess the same probative value [.]" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d at 272, 574 N.E.2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293 (1990), citing *Hurt v. Charles J. Rogers Transp. Co*, 164 Ohio St. 329, 331, 130 N.E.2d 820 (1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott*, 51 Ohio St.3d at 168, 555 N.E.2d 293, citing *Hurt*, 164 Ohio St. at 331, 130 N.E.2d 820.

{¶ 48} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Crank committed the crimes. We hold, therefore, that the state met its burden of production regarding each element of the crimes of aggravated murder, aggravated burglary, aggravated robbery and arson, and that a firearm was used, and, accordingly, there was sufficient evidence to support Crank's convictions.

*State v. Crank*, 2015 WL 2376007, at **4-7.  The Ohio Court of Appeals also commented that the credibility of witnesses is an issue for the factfinder, *id*., at *8, and the jury heard testimony regarding the witnesses' criminal convictions, Doc. 10-4, pp. 146-147, 149, 205, 222-223; Doc. 10-5, pp. 21-22, 65-66, 281-284.

Crank complains that there was no physical evidence linking him to the crimes, he was drunk when he made statements about the crime, there were discrepancies in the way the crime was committed and what Crank had stated to witnesses, and the witnesses had felony convictions and self-serving interests in cooperating with the state.  Doc. 26, pp. 13-17.  However, the jury heard all the evidence and Crank's challenges to the evidence at trial.  Crank's trial counsel emphasized to the jury during closing argument that the state did not have physical evidence linking Crank to the crimes, Doc. 10-5, p. 276, and highlighted the fact that Crank's statements

were made when he was drunk; that he never named the victim in any of the recordings and it was only according to witness testimony that Crank mentioned the victim's name; and that the witnesses had felony convictions and their participation in the case was self-serving.  Doc. 10-5, pp. 275-286.  Crank's trial counsel also argued to the jury the fact that many details in statements allegedly made by Crank did not match the details of the crime.  Id.

The Ohio Court of Appeals correctly noted that a defendant can be convicted based on circumstantial evidence alone and that the court does not re-weigh the credibility of witnesses on appeal.  *See Johnson*, 200 F.3d at 992; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) ("attacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence.").  The state Court of Appeals properly asked whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt and answered in the affirmative.  *See Jackson*, 443 U.S. at 319.  This was not unreasonable, and this Court must, therefore, defer to the state Court of Appeals' sufficiency determination.  *Brown*, 567 F.3d at 205.

## C. Ground Three fails on the merits

In Ground Three, Crank argues that his right to confront witnesses against him was violated when the trial court permitted testimony from Detective George stating that Robert Cassidy gave George information connecting Crank to Angelo's death.  Doc. 24, p. 8.  The Sixth Amendment's Confrontation Clause provides, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."  U.S. CONST. Amend. VI.  A witness's testimony is inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination.  *Melendez-Diaz v.*

26

*Massachusetts*, 557 U.S. 305, 309 (2009) (citing *Crawford v. Washington*, 541 U.S. 36, 54 (2004)).

At trial, Detective George "did not testify to any specific statement made by Cassidy," but testified that,

> The interview with Mr. Cassidy and the content of that interview paralleled what I was told by the other two women earlier in the year.
>
> The difference there was it was [] told to [Cassidy] by a different person, not Mr. Crank.

*Crank*, 2015 WL 2376007, at *9; Doc. 10-3, p. 262.  In other words, the testimony was "George telling the jury that Cassidy told him that some unidentified third person had told Cassidy that Crank was involved in the death of Mr. Angelo." *Crank*, 2015 WL 2376007, at *9.  The Ohio Court of Appeals agreed that this testimony should not have been permitted, but disagreed that it violated Crank's rights under the Confrontation Clause.  It found that the trial court's error was harmless because, "[i]n addition to the state's other witnesses, the jury had the benefit of Crank's recorded statements to establish his guilt" and "[t]here is absolutely no evidence to suggest that the jury abandoned their oaths, their integrity or the trial court's instructions and found Crank guilty of the crimes because of Detective George's testimony concerning Robert Cassidy." *Id.*, at *10.

A federal habeas court considers a state court's harmless error determination of a constitutional trial error under the standard set forth in *Brecht v. Abrahamson*—"whether the [complained of] error 'had substantial and injurious effect or influence in determining the jury's verdict.'"  507 U.S. 619, 623 (1993); *Davis v. Ayala*, 135 S.Ct. 2187, 2197 (2015) (when a state court applies a harmless error analysis, a habeas petitioner must show that the trial error "resulted in 'actual prejudice[,]'" quoting *Brecht*, 507 U.S. at 637).  This standard applies to

"constitutional error[s] of the trial type[,]" *Brecht*, 507 U.S. at 638, including the admission of hearsay testimony, *Anthony v. DeWitt*, 295 F.3d 554, 562 (6th Cir. 2002).

Here, the Ohio Court of Appeals' harmless error determination was not unreasonable and Crank does not demonstrate that the trial court error resulted in actual prejudice to him.  It cannot be said that, without George's non-specific testimony about an interview that was consistent with other witness accounts, the jury would have discounted all the other evidence presented at trial.  That evidence included an audio recording wherein Crank repeatedly stated that he killed an "old man," stated that there were no fingerprints left at the scene and that it cannot be proved, and pleaded with others not to tell on him (Doc. 10-4, pp. 199-204).  The evidence also included testimony from numerous witnesses that Crank had stated that he beat and shot an old man, "Bennie," that he had gotten away with murder, and that he had robbed and taken a gun from a man that lived in a home on Endrow and set fire to the house.  *Crank*, 2015 WL 2376007, at *6.  Crank argues that George is a police officer and, therefore, his testimony carried more weight, Doc. 26, p. 20; but the fact remains that the statements made by George at trial were non-specific and consistent with other witness accounts described above.

Because Crank cannot show actual prejudice, Ground Three fails on the merits.

### D. Ground Four fails on the merits

In Ground Four, Crank argues that the trial court violated his Due Process rights when it overruled his motion for a mistrial, which was based on a state witness referencing photos the witness had of Crank's mother after Crank had beaten her up.  Doc. 24, p. 9.  Crank contends that this testimony was heard despite the trial court's ruling that evidence of Crank's prior convictions and character would not be introduced.  Doc. 24, p. 9.

At trial, state witness Brenda Haywood testified about a conversation that she had had with Crank wherein they were discussing Crank's murder of the "child molester" and Crank

28

stating his reasons for doing it and that he would not get caught.  Doc. 10-5, p. 47.  Haywood

then testified,

> "And I said, and I truly had it, I said you need help.  And I pulled out from the glove
> compartment pictures of his mom when he beat her up..."

Doc. 10-5, pp. 47-48.  Crank's counsel objected and asked for a mistrial.  Doc. 10-5, p. 48.  The

trial court had a sidebar with counsel and, after discussion, sustained counsel's objection, denied

his motion for a mistrial, and immediately instructed the jury to disregard the witness's comment

regarding the photograph and what it depicted.  Doc. 10-5, pp. 48-51.  The Ohio Court of

Appeals considered Crank's claim that the trial court erred when it denied his motion for a

mistrial:

> {¶ 66} The granting of a mistrial rests within the sound discretion of the trial court as it is
> in the best position to determine whether the situation at hand warrants such action. *State
> v. Glover*, 35 Ohio St.3d 18, 517 N.E.2d 900 (1988); *State v. Jones*, 115 Ohio App.3d
> 204, 207, 684 N.E.2d 1304, 1306 (7th Dist.1996).

> {¶ 67} "A mistrial should not be ordered in a criminal case merely because some error or
> irregularity has intervened * * *." *State v. Reynolds*, 49 Ohio App.3d 27, 33, 550 N.E.2d
> 490, 497 (2nd Dist.1988). The granting of a mistrial is necessary only when a fair trial is
> no longer possible. *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1, 9 (1991);
> *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749, 771 (2001). When reviewed by
> the appellate court, we should examine the climate and conduct of the entire trial, and
> reverse the trial court's decision as to whether to grant a mistrial only for a gross abuse of
> discretion. *State v. Draughn*, 76 Ohio App.3d 664, 671, 602 N.E.2d 790, 793–794 (5th
> Dist.1992), *citing State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984), *certiorari
> denied*, 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 728 (1985); *State v. Gardner*, 127
> Ohio App.3d 538, 540–541, 713 N.E.2d 473, 475 (5th Dist.1998).

> {¶ 68} In evaluating whether the trial judge acted properly in declaring a mistrial, the
> court has been reluctant to formulate precise, inflexible standards. Rather, the court has
> deferred to the trial court's exercise of discretion in light of all the surrounding
> circumstances:

> > We think, that in all cases of this nature, the law has invested Courts of justice
> > with the authority to discharge a jury from giving any verdict, whenever, in their
> > opinion, taking all the circumstances into consideration, there is a manifest
> > necessity for the act, or the ends of public justice would otherwise be defeated.
> > They are to exercise a sound discretion on the subject; and it is impossible to
> > define all the circumstances, which would render it proper to interfere. To be sure,

the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes. * * * But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

{¶ 69} *United States v. Perez*, 9 Wheat. 579, 22 U.S. 579, 580, 6 L.Ed. 165 (1824). *See, also, United States v. Clark*, 613 F.2d 391,400 (2nd Cir.1979), *certiorari denied* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22[;] *State v. Widner*, 68 Ohio St.2d 188, 190, 429 N.E.2d 1065, 1066–1067(1981).

{¶ 70} In *Bruton v. United States*, 391 U.S. 123, 135–136, 88 S.Ct. 1620, 20 L.Ed.2d 476(1968), the United States Supreme Court noted:

> Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. A defendant is entitled to a fair trial but not a perfect one. * * * It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information.

{¶ 71} In the case at bar, the trial court immediately admonished the jury to disregard the witness's statements. "Juries are presumed to follow their instructions." *Zafiro v. United States* 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). "A presumption always exists that the jury has followed the instructions given to it by the trial court." *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313 (1990), at paragraph four of the syllabus, *rehearing denied*, 54 Ohio St.3d 716, 562 N.E.2d 163, *approving and following State v. Fox*, 133 Ohio St. 154, 12 N.E.2d 413 (1938); *Browning v. State*, 120 Ohio St. 62, 165 N.E. 566 (1929).

{¶ 72} In the case at bar, the testimony was inadvertent, fleeting and immediately corrected by the trial court. Prior bad acts of Crank were never admitted into evidence.

{¶ 73} Crank has not cited any evidence in the record that the jury failed to follow the trial court's instruction. Accordingly, we find that Crank has failed to rebut the presumption that the jury followed the trial court's instructions to disregard the statements.

{¶ 74} Because we find there is no reasonable possibility that testimony cited as error by Crank contributed to a conviction, any error is harmless. *State v. Kovac*, 150 Ohio App.3d 676, 782 N.E.2d 1185, 2002–Ohio–6784, ¶ 42; *State v. Lindsay*, 5th Dist. Richland No.2010–CA–0134, 2011–Ohio–4747, ¶ 75.

*Crank*, 2015 WL 2376007, at *10-11.

The Ohio Court of Appeals applied the correct standard of review to Crank's claim that the trial court erred in denying his motion for a mistrial. *See Illinois v. Somerville*, 410 U.S. 458, 461-463 (1973) (it is settled law that the trial court has broad discretion to consider whether to declare a mistrial taking all the circumstances into consideration, citing *U.S. v. Perez*, 9 Wheat. 579 (1824)); *see also Simons v. Richards*, 2015 WL 3407662, at *4-7 (S.D.Ohio May 26, 2015) (petitioner's claim that trial court erred when it denied his motion for mistrial after a state witness inadvertently testified that he knew the defendant from prison when evidence of the defendant's time spent in prison had not been disclosed failed; the state court of appeals' finding that the testimony was unexpected, a bench conference was immediately held, and the trial court gave a prompt curative instruction was not an unreasonable application of Supreme Court precedent). Moreover, a petitioner is not entitled to federal habeas relief based on a theory that the admission of prior bad acts was used to show propensity to commit the charged act. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) ("There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence[,]" citing *Estelle v. McGuire*, 502 U.S. 62, 75 (1991)).

Crank argues that his case is different because "few things are more egregious, prejudicial or emotionally inflammatory of the passions of a jury—who are the public—as the beating of one's parent, *especially one's mother*," and that the jury could not be relied upon to ignore it despite being instructed to do so. Doc. 26, p. 21 (emphasis in original). He does not provide Supreme Court precedent clearly establishing that such evidence of a prior bad act is of such egregious nature that the presumption of jury compliance with an instruction is overcome and the state trial court's failure to declare a mistrial is constitutional error, and the undersigned is not aware of such a case. Furthermore, the unreasonable application clause of § 2254 does not provide relief because "The critical point is that relief is available under § 2254(d)(1)'s

unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no "fairminded disagreement" on the question.'"  *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014) (quoting *Harrington*, 562 U.S. at 103).  It cannot be said that the Ohio Court of Appeals' decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington*, 562 U.S. at 103.

Ground Four fails on the merits.

**E. Ground Five is not cognizable.**

In Ground Five, Crank argues that he did not receive a fair trial due to the cumulative errors that occurred during trial as set forth in Grounds Three and Four.  Doc. 24, p. 10.  This claim is not cognizable because cumulative error is not a cognizable claim for federal habeas relief in this circuit.  *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) (claims of cumulative error are not cognizable on federal habeas review because the Supreme Court has not spoken on this issue).

**F. Ground Six fails on the merits**

In Ground Six, Crank argues that trial counsel was ineffective because (1) his two appointed attorneys pursued different strategies for his defense; (2) counsel "kept belaboring the issue of whether Detective George ever had anyone confess to a crime that he or she did not commit"; and (3) counsel made reference to the fact that Crank was incarcerated.  Doc. 24, p. 11.

The Ohio Court of Appeals considered these claims, applying the *Strickland* standard. *Crank*, 2015 WL 2376007, at *12.  In chronological order, it explained,

> {¶ 85} Crank first complains that his trial counsel—two attorneys-—were "not on the same page." As an example, Crank points to one of his counsel objecting to alleged hearsay testimony by Detective George and the other counsel using that testimony during cross-examination.

{¶ 86} Crank cites Detective George's testimony concerning Robert Cassidy, as outlined in our analysis of Crank's Second Assignment of Error. We note that the trial court overruled defense counsel's objection and allowed Detective George's testimony. Accordingly, it was a proper subject of cross-examination.

*Id.*, at \*13.  The Ohio Court of Appeals' finding that Crank did not receive ineffective assistance of counsel when one of his trial attorneys cross-examined a witness about information that witness had previously testified to is not unreasonable.  Moreover, Crank's attorneys conferred with one another just prior to the attorney's cross-examination of Detective George about the names of the people he had interviewed, including Cassidy.  Doc. 10-4, p. 61.  Crank posits that one attorney deemed the evidence proper and the other did not.  Doc. 26, p. 26.  This is inaccurate.  Rather, one attorney objected to the evidence, the trial court overruled the objection and found the evidence to be proper, and, therefore, the other attorney, after conferring with co-counsel, cross examined the witness about the evidence.  This was not proof that trial counsel "did not show a united front."  Doc. 26, p. 26.

The Ohio Court of Appeals continued,

{¶ 87} Crank's second example of alleged ineffectiveness also involves the cross examination of Detective George and faults counsel for asking George if "in high profile cases, people confess to crimes they did not commit." Detective George repeatedly answered he was not familiar with anyone ever confessing to a crime they did not commit.

{¶ 88} A defendant has no constitutional right to determine trial tactics and strategy of counsel. *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298 (1999); *State v. Conway*, 108 Ohio St.3d 214, 2006–Ohio–791, 842 N.E.2d 996, ¶ 150; *State v. Donkers*, 170 Ohio App.3d 509, 2007–Ohio–1557, 867 N.E.2d 903[](11th Dist.), ¶ 183. Rather, decisions about viable defenses are the exclusive domain of defense counsel after consulting with the defendant. *Id*. When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980), *citing People v. Miller*, 7 Cal.3d 562, 573–574, 102 Cal.Rptr. 841, 498 P.2d 1089 (1972); *State v. Wiley*, 10th Dist. Franklin No. 03AP–340, 2004–Ohio–1008, ¶ 21.

{¶ 89} The scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel. *State v. Hoffner*, 102 Ohio St.3d 358, 2004–Ohio–3430, 811 N.E.2d 48, ¶ 45; *State v. Campbell*, 90 Ohio

St.3d 320, 339, 738 N.E.2d 1178 (2000). In addition, to fairly assess counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 90} We cannot say that counsel's line of questioning constituted deficient or unreasonable performance. His trial counsel may have sought to demonstrate the unreasonableness of Detective George's belief by citing examples with which counsel hoped the jury would be aware.

{¶ 91} Crank has failed to demonstrate that trial counsel's cross-examination of Detective George was an unreasonable trial strategy. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984).

*Crank*, 2015 WL 2376007, at *13.  Crank does not explain how the Ohio Court of Appeals' decision was an unreasonable application of *Strickland*.  Moreover, as Crank himself concedes in his Traverse (Doc. 26, p. 27), although George stated that he had not known an individual to confess to a crime that he or she did not commit, the questioning allowed Crank's attorney to make statements concerning the well-known fact that people do confess to crimes that they did not commit and to sow seeds of disbelief regarding George's lack of knowledge of these instances.  See Doc. 10-4, pp. 39-42.  This was a reasonable trial strategy given that the jury heard an audiotape of Crank confessing to crimes and that Crank attempted to explain away his confessions by pointing out that he was drunk when he made them (Doc. 10-5, p. 286 (defense counsel's closing argument: "what this case amounts to is statements by a drunk.")).

And the Ohio Court of Appeals, considering Crank's final claim, stated,

{¶ 92} Crank next contends that his trial counsel was deficient because he brought to the attention of the jury the fact that Crank was incarcerated.

{¶ 93} The United States Supreme Court has held that a defendant''s right to due process is violated when he is compelled to appear at trial wearing identifiable prison clothing. *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126(1976). The court reasoned, in part, "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment." *Id*. at 504–05. The Supreme Court, however, declined to establish a per se rule that invalidated a conviction whenever the accused wore jail clothing at trial. *Id*. Rather, when a defendant wears prison attire before the jury, the relevant inquiry is whether he was compelled to do so. *Estelle v.*

34

*Williams*, 425 U.S. at 507, 96 S.Ct. 1691, 48 L.Ed.2d 126. *See, also, State v. Reese*, 5th Dist. Richland No.2007–CA–0097, 2008–Ohio–2512, ¶ 11.

{¶ 94} The *Estelle* court stated as follows, "The reason for this judicial focus upon compulsion is simple; instances frequently arise where a defendant prefers to stand trial before his peers in prison garments. The cases show, for example, that it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." *Estelle*, 425 U.S. at 508, 96 S.Ct. 1691, 48 L.Ed.2d 126.

{¶ 95} The *Estelle* court further stated that, "Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system." *Estelle v. Williams*, 425 U.S. at 512, 96 S.Ct. 1691, 48 L.Ed.2d 126[.]

{¶ 96} Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643, 1995–Ohio–171. Even if the wisdom of an approach is questionable, "debatable trial tactics" do not constitute ineffective assistance of counsel. *Id*. "(p)oor tactics of experienced counsel, however, even with disastrous result, may hardly be considered lack of due process * * *." *State v. Clayton*, 62 Ohio St.2d 45, 48, 402 N.E.2d 1189 (1980) (quoting *United States v. Denno*, 313 F.2d 364 (2nd Cir.1963), *certiorari denied* 372 U.S. 978, 83 S.Ct. 1112, 10 L.Ed.2d 143.

{¶ 97} In the case at bar, it was defense counsel who brought Crank's incarceration to the jury's attention. While the strategy of bringing this to the jury's attention may be debatable, Crank was not compelled to appear in jail attire and was not shack[l]ed or restrained during the proceedings. *See, Illinois v. Allen*, 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

{¶ 98} Upon review, we are unpersuaded that Crank suffered demonstrable prejudice via defense counsel's eliciting testimony that Crank was incarcerated.

*Crank*, 2015 WL 2376007, at *14-15.  Crank argues that there was "no strategy" used by defense counsel when referring to Crank's incarceration (Doc. 26, p. 28), but defense counsel explained the strategy at the time he referred to Crank's incarceration (Doc. 10-4, pp. 75-76).  Counsel explained that the detective told Crank that the state may pursue the death penalty against him, that Crank should cooperate to avoid the death penalty, and that Crank's cooperation would also mean the difference between being placed in the general population or in a cell for 23 hours a day.  Doc. 10-4, pp. 71, 74.  Defense counsel referenced the fact that Crank was still in jail to

show that, had he had information that would have helped the state, he had an incentive to provide that information, and the fact that he did not provide any information showed that he possessed no information.  Doc. 10-4, p. 76.  Furthermore, Crank cannot show prejudice because the jury already knew that he was incarcerated.  Doc. 10-4, p. 75.  It cannot be said that the Ohio Court of Appeals' determination—that Crank could not show a reasonable probability that, but for counsel's purported error, the result of his proceedings would have been different—"was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington*, 562 U.S. at 103.

Ground Six fails on the merits.

### G. Ground 7

In Ground 7, Crank argues that trial counsel was ineffective for four reasons: they (1) failed to investigate and object to false statements made by Robert Race; (2) failed to call witnesses that could provide exculpatory testimony despite Crank telling counsel about these witnesses and failed to call a witness from the half-way house where Crank was under curfew at the time of the crime; (3) failed to call an expert witness to testify as to Crank's level of intoxication when he confessed to the crime and how his intoxication would have affected the reliability of his confession; and (4) failed to investigate the fact that Crank was under curfew and residing in a half-way house at the time of the crime, depriving him of an affirmative defense.  Doc. 24, p. 12.

#### 1. Failure to object to statements made by Robert Race

Crank argues that trial counsel was ineffective for not investigating and objecting to allegedly false statements made by state's witness Robert Race.  Doc. 24, p. 12; Doc. 26, p. 29. He explains that Race testified at trial that Crank came to his house bragging about getting away with murder and that, at trial, Race was vague about the date this occurred.  Doc. 26, p. 29; see

Doc. 10-5, p. 138.  Crank identifies the witness statement Race made to the police on January 7, 2013, wherein Race stated that Crank came over his house and bragged about getting away with murder on "Tuesday before last....Two weeks ago."  Doc. 10-1, p. 334.  Crank argues that the Tuesday two weeks prior to Race's statement to police was December 25, 2012, and states that he, Crank, was incarcerated from December 7, 2012, until February 2, 2013.  Doc. 26, p. 30.  He provides a printout of his booking information from the Stark County Jail showing that he was incarcerated during that time period, Doc. 10-1, p. 313, and submits that this shows that Race's testimony at trial "was entirely fabricated and impossible."  Doc. 26, p. 30.  He alleges that trial counsel was ineffective for failing to challenge Race's testimony.  Doc. 24, p. 12; Doc. 26, pp. 29-31.

After setting forth the *Strickland* standard (Doc. 10-1, pp. 364-367), the Ohio Court of Appeals considered this claim on the denial of Crank's state post-conviction petition:

{¶21} Initially, Appellant alleges his trial counsel was ineffective in failing to cross examine Robert Race as to the dates of Appellant's alleged confession, and in failing to present evidence Appellant was incarcerated in Case No. 2012CRB04538 at the time of his alleged confession. Appellant's petition for post-conviction relief submits he was incarcerated at the time of the alleged confession as to which Robert Race testified, and submits Exhibit A from the Stark County Jail indicating a booking date of 12/07/12, and a release date of 02/02/2013, on Stark County Case No. 2012CRB04538, for unauthorized use of a vehicle.

{¶22} Specifically, Robert Race testified at trial Appellant came over to his home about a year and a half before the trial and Appellant talked about the murders. Race did not specify an exact date or time he heard the statement, but rather testified to a general timeframe of a "year and a half" before the trial. Therefore, we find Appellant's claim he was incarcerated at the time of the statement to be speculative. Further, we find Race's testimony cumulative evidence to the numerous witnesses who testified as to Appellant's statements confessing to the robbery, burglary, arson and murder of Bennie Angelo.

{¶23} Appellant has not demonstrated prejudice as a result of the testimony of Race.

Doc. 10-1, pp. 367-368.

Crank argues that, while Race's testimony at trial was vague about the date he heard Crank's confession, Race's statement to police clearly showed that Race told the police that Crank confessed on December 25, 2012, when Crank could not have confessed because he was in jail. Doc. 26, p. 19. Thus, Crank suggests, trial counsel was ineffective for not cross examining Race using Race's statement made to police wherein Race stated that Crank confessed to him on a day when Crank was incarcerated on another case. Doc. 24, p. 12; Doc. 26, pp. 29-30.

Crank's challenge to the Ohio Court of Appeals' determination that he was provided effective assistance of trial counsel fails. First, as the Ohio Court of Appeals observed, trial counsel's strategy and tactics are entitled to deference. Doc. 10-1, p. 366; *see Strickland*, 466 U.S. at 690-691; *see also Sowell v. Collins*, 557 F.Supp.2d 843, 885-886 (S.D.Ohio 2008) (observing that strategic choices of counsel are entitled to deference, including the cross-examination of witnesses).[5] Here, it was reasonable for trial counsel not to cross examine Race as to the precise date he originally told the police Crank confessed because to do so would require trial counsel to disclose the fact that Crank had previously been incarcerated on another matter. It was sound strategy to avoid raising evidence of Crank's prior criminal history and the fact that he had previously been in jail on an unrelated matter, as Crank concedes elsewhere in his Traverse (Doc. 26, p. 28). Moreover, y the jury may well have believed that Race had been mistaken about the specific date he originally told police that Crank had come over. Finally, Crank does not show that the Ohio Court of Appeals' determination that he was not prejudiced by Race's testimony because it was cumulative of other witness testimony was unreasonable. Race's testimony that Crank confessed to killing a man was cumulative of other witness

---

[5] Crank does not specifically allege that trial counsel did not investigate and was not aware of Race's statement to the police. The undersigned observes that trial counsel cross-examined other witnesses using their statements made in police reports (see Doc. 10-4, pp. 238-242; Doc. 10-5, pp. 59, 85), indicating that the decision not to cross-examine Race using the statement in his police report was based on trial strategy.

testimony.  See, e.g., Doc. 10-4, p. 154 (Lyons), p. 229 (Culberston); Doc. 10-5, pp. 28-29, 44,

47 (Haywood), pp. 72-73 (Villegas).

     The Ohio Court of Appeals' decision was not unreasonable.

### 2. Failure to call witnesses that could provide exculpatory testimony and the failure to call an alibi witness

     In his petition, Crank argues that trial counsel was ineffective because they failed to call

witnesses that could provide exculpatory testimony despite Crank telling counsel about these

witnesses; and failed to call a witness from the half-way house where Crank was under curfew at

the time of the crime.  Doc. 24, p. 12.  In his Traverse, he disclaims that he alleged counsel was

ineffective for failing to call witnesses from the half-way house.  Doc. 26, p. 31 ("The persons

that Petitioner wanted called as witnesses were not 'from the Half-way house[.']").  Accordingly,

he has abandoned this argument.

     The Ohio Court of Appeals considered Crank's argument:

> {¶24} Appellant further asserts his counsel was ineffective in failing to call witnesses on his behalf. Specifically, Appellant argues trial counsel failed to call the individuals said to have been present at the time Appellant made statements to the witnesses presented by the State at trial.

> {¶25} Appellant's petition does not present affidavits or the names of any particular witnesses, nor does Appellant identify what the witnesses would have testified to at trial. Rather, Appellant speculates the witnesses' testimony would have been beneficial to his defense. Appellant asserts he could not attach evidence or affidavits on behalf of the witnesses as he needs appointed counsel or an appointed expert witness to obtain the same.

> {¶26} The trial court previously denied Appellant's request for court appointed counsel and a court appointed expert witness on his behalf as petitions for post-conviction relief are civil in nature. Appellant did not appeal the trial court's ruling.

> {¶27} Upon review, Appellant has not demonstrated but for the alleged error of counsel, the outcome of the trial would have been otherwise. We find Appellant's argument speculative and insufficient to satisfy the prejudice prong of *Strickland*.

Doc. 10-1, p. 368.

Crank contends that the police spoke to "Tony Tucker, Thomas Alcar, Cristal Franklin, Toni Crank, and Sophis Kunitch" and that he tried to obtain "this discovery" but could not because his mother has his court documents and the prison denied him access to these documents.  Doc. 26, p. 31.  He complains that the state court denied his request for assistance to obtain "affidavits of the statements to support his claim."  Doc. 26, p. 32.  He states that trial counsel was ineffective because they presented "no evidence" and suggests that counsel failed to investigate and interview these witnesses.  Doc. 26, p. 32.  He claims that the witnesses' statements are "speculative" only inasmuch as he was "prevented from obtaining them."  Doc. 26, p. 32.

Crank provides no evidence that any of the witnesses would have testified differently than the witnesses at trial; that trial counsel failed to investigate the witnesses or was unaware of their statements to police; or that the prison prevented his mother from sending him records from police interviews with his named witnesses.  Instead, he merely speculates as to what the witnesses would have testified to and assumes that his trial counsel did not interview the named witnesses.  Crank does not even claim that the named witnesses would have testified that he did not confess to killing a man.  Instead, he claims,

> Their statements would show the rigged situation and the entirety of the ridiculous statements made by Petitioner while heavily intoxicated, to the point where he would vomit and lose consciousness and "black out," and show that without the manipulative choosing and rejecting of statements and the leading of the state's witnesses by the prosecution that his "confession" did not comport with the facts of the case.

Doc. 26, p. 32.  In other words, the named witnesses, according to Crank, would have testified as to how drunk Crank was when he confessed to killing the victim.  This is not "exculpatory" evidence, i.e., evidence showing innocence, as Crank claims.[6]  Moreover, all the state's

---

[6] One of Crank's named witnesses, Tom Alkire, was present when Lyons recorded Crank confessing to killing a man (Doc. 10-4, pp. 179, 181, 201, 204).  Thus, Alkire would not have testified that Crank did not confess because the jury heard the audio tapes of Crank confessing as Lyons and Alkire spoke to him.

witnesses who did testify described how Crank confessed to killing a man when he was drunk. See, e.g., Doc. 10-4, pp. 184-185 (Lyons, "we were drinking really heavily that night on liquor"), p. 173 (Lyons, "And then when we were done, ... after he was so obliterated, you know,..."), p. 233 (Culberston); Doc. 10-5, pp. 29, 39, 43-44, 46 (Haywood), pp. 70-72 (Villegas, "he would get drunk and he would just start to cry, you know, and admit to things that, you know, happened."). More witnesses testifying that Crank was drunk when he confessed to killing a man would have been cumulative.

Crank does not show that the Ohio Court of Appeals' finding, that he was not prejudiced by any alleged ineffectiveness of counsel for allegedly failing to investigate or call his named witnesses at trial, was unreasonable.

### 3.  Failure to call an expert witness to testify as to Crank's level of intoxication

Crank argues that trial counsel was infective for failing to call an expert witness to testify as to his level of intoxication when he confessed to the crime and how his intoxication would have affected the reliability of his confession. Doc. 24, p. 12. The Ohio Court of Appeals stated,

> {¶28} Appellant also maintains trial counsel was ineffective in failing to call an expert to testify as to Appellant's level of intoxication at the time of the tape recorded statements made to Regina Lyons, Appellant's cousin. We disagree.

> {¶29} Numerous witnesses testified at trial as to statements made by Appellant relative to the arson, robbery, burglary and murder of Bennie Angelo. Numerous witnesses testified to Appellant's drinking and intoxication prior to making the statements confessing to the crimes. The witnesses testified Appellant would often drink and start talking about killing a man.

> {¶30} Regina Lyons agreed to wear a digital recording device to record Appellant's statements in order to assist law enforcement herein. She recorded over twenty-hours of conversation with Appellant. She testified at trial Appellant would start drinking, and would freely talk about the killing and beating of Bennie Angelo. During one recorded statement, Appellant mentioned watching "Bennie bleed out" and said he enjoyed it. Another time he said he beat him [Angelo] and burned down the house.

{¶31} Appellant has not provided sufficient evidence as to how the testimony of an expert would have educated the jurors or added to his defense. He simply speculates the expert would testify the alcohol and drugs led him to falsely confess, numerous times, in separate settings, to different individuals relative robbery [sic], burglary, murder and arson involving Bennie Angelo.

{¶32} We find Appellant's argument relative to expert testimony speculative. Appellant cannot demonstrate prejudice under the second prong of *Strickland*.

Doc. 10-1, pp. 368-369.

Crank first argues that the fact that no other witness was able to obtain a recording of his confession "should weigh in [his] favor." Doc. 26, p. 33.  This argument has no bearing on his claim that counsel was ineffective for failing to call an expert to testify as to his level of intoxication.  His assertion that it is "obvious that the level of intoxication displayed during the recordings show [he] was not in his right state of mind" (Doc. 26, p. 34) cuts against his argument that an expert was needed at trial to testify as to his level of intoxication and what it showed regarding his state of mind.  Defense counsel relied on a lay person's understanding of intoxication and how it affects a person's actions.  See Doc. 10-5, p. 286 (closing argument).  Importantly, Crank does not explain how an expert could have determined his intoxication level simply by listening to a recording of his voice.

Crank contends that the Court of Appeals erroneously stated that he had been recorded confessing to having killed "Bennie" but that none of the recordings contain statements by Crank mentioning the victim by name.  Doc. 26, p. 35-36.  Nevertheless, this alleged error by the state court in detailing the factual allegations had no bearing on the state court's finding with respect to whether Crank was prejudiced by trial counsels' failure to obtain an expert to testify as to the level of Crank's intoxication.  *See Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011) ("[I]t is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner

must show that the resulting state court decision was 'based on' that unreasonable determination.").

Lastly, Crank submits that a witness is not competent to testify at trial while intoxicated. Doc. 26, p. 34. But Crank did not testify at trial while drunk; nor did any of the state's witnesses. The case he cites to in support that an expert could have testified on his behalf, *Tevaga v. McGrath,* 2007 WL 2572245, at *3 (N.D.Cal. Sept. 5, 2007), involved expert testimony stating that, had the defendants consumed the amounts of alcohol and marijuana they said they consumed and, considering their body weights, they would have had a decreased ability to make good judgments and would have lacked rational thought when they beat a man to death. Doc. 26, p. 34. *Tevaga* does not provide support for Crank's ground for relief because (1) the expert testimony was not an issue discussed in that case; (2) Crank is not stating that he was intoxicated when he killed the victim or claiming an intoxication defense; and (3) there is no evidence with which an expert could have considered the amount of alcohol Crank consumed and his body weight on the numerous occasions he confessed to killing a man while drunk. Indeed, it is not certain that an expert would have helped Crank; he does not explain why he believes an expert would have testified that his confessions were "wholly without credibility," as he claims (Doc. 26, p. 35).

Crank does not show that the Ohio Court of Appeals' finding, that he was not prejudiced by any alleged ineffectiveness of counsel for failing to call an expert witnesses at trial to testify as to his level of intoxication when he confessed to the crime and how his intoxication would have affected the reliability of his confession, was unreasonable.

### 4. Failure to investigate the fact that Crank was under curfew and residing in a half-way house at the time of the crime

Crank argues that trial counsel was infective for failing to investigate the fact that he was

under curfew and residing in a half-way house at the time of the crime, depriving him of an

affirmative defense.  Doc. 24, p. 12.  The Ohio Court of Appeals considered this claim:

> {¶33} Finally, Appellant asserts trial counsel was ineffective in failing to investigate an alibi defense. Appellant asserts he was either incarcerated or court ordered to reside in a half-way house at the time of the offenses.
>
> {¶34} Appellant attaches Exhibit C to his petition for post-conviction relief, a printout docket from the Canton Municipal Court in Case No. 2006CRB02689. The docket indicates on 06/21/2006, the trial court ordered Appellant "continue with Phoenix House," a half-way house. Appellant contends, because the docket does not indicate the trial court noted a release date from Phoenix House, he was still housed there at the time the murder, arson, robbery and burglary were alleged to have been committed herein. We disagree.
>
> {¶35} The Canton Municipal Court docket indicates on 07/12/2006 the court, via Journal Entry, placed Appellant under Community Control Supervision. On 8/29/2006, the docket indicates Appellant "completed TASC." Accordingly, we find Appellant's assertion he was housed in a half-way house at the time of the commission of the charges herein and therefore subject to roll-call and curfew, not supported by the evidence but merely speculation.
>
> {¶36} Upon review of Appellant's petition for post-conviction relief and the record herein, we find Appellant has not submitted evidentiary documents nor alleged operative facts which would entitle Appellant to an evidentiary hearing, and Appellant has not demonstrated the lack of competent counsel or his defense was prejudiced by counsel's ineffective assistance at trial.

Doc. 10-1, pp. 369-370.

Crank argues that the Ohio Court of Appeals' factual determination that he was not in a

half-way house at the time of the crime was "an unreasonable assumption."  Doc. 26, pp. 36-37.

Under AEDPA, "when a federal habeas petitioner challenges the factual basis for a prior state-

court decision rejecting a claim, the federal court may overturn the state court's decision only if

it was 'based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding.'"  *Burt v. Titlow*, -- U.S. --, 134 S.Ct. 10, 15 (2013) (citing 28 U.S.C.

§ 2254(d)(2)).[7]  "The prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.'"  *Id.* (citing § 2254(e)(1)).  A state court's factual determination is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance."  *Id.* (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

To recap, the Canton City firefighters were dispatched to the victim's home at 1:00 a.m. on January 7, 2007.  *Crank*, 2015 WL 2376007, at *1.  Crank does not provide the Court with evidence that he was in the half-way house at the time of the crime.  He does not provide any affidavits, from himself or from others.  He argues that the Canton Municipal Court docket shows that he was "in the half-way house at the time of the crime, which was past the curfew time of the half-way house."  Doc. 24, p. 12, Doc. 10-1, p. 330 (docket sheet).  But the docket sheet does not show that he was in the half-way house on the day of the crime, nor does it show that he was subjected to curfew, what time his curfew was, and whether he had been signed in.  By Crank's own admission, the docket sheet merely shows that a judge had ordered him to "continue with Phoenix House" on June 21, 2006.  Doc. 26, p. 36; Doc. 10-1, p. 330.  It does not show a release date.  The fact that the docket shows that Crank paid his restitution in May 2007 does not prove that he was at Phoenix House from June 2006 until May 2007.  The fact that the docket shows that he was discharged from probation in June 2007 does not prove that he was at Phoenix House until June 2007.  Thus, his assertion that evidence shows he was in a half-way house during the commission of the crime is not supported by any evidence, let alone clear and convincing evidence.  He cannot show, therefore, that the Ohio Court of Appeals' factual determination was unreasonable based on the evidence presented to it.  *Burt*, 571 U.S. at 15.  Nor

---

[7]  The Supreme Court has not decided, in a challenge to a state court's factual determination, whether the "unreasonable" standard in 28 U.S.C. § 2254(d)(2) applies or the "clear and convincing evidence" standard in 28 U.S.C. § 2254(e)(1) applies.  *See Wood v. Allen*, 558 U.S. 290, 300-301 (2010); *McMullan v. Booker*, 761 F.3d 662, 670 (6th Cir. 2014).  Crank's challenge to the state court's factual determination here meets either standard.

does he show that the Ohio Court of Appeals' determination—that trial counsel was not ineffective due to counsels' failure to develop an alibi— was unreasonable.

### H. Ground 8 is not cognizable

In Ground 8, Crank argues that the trial court violated his due process rights when it denied his post-conviction petition because it was not supported by evidentiary material and denied him assistance of an expert to acquire the evidence.  Doc. 24, p. 13.  He also complains that the trial court improperly applied the res judicata bar.  Doc. 24, p. 13.

In its decision denying Crank's appeal of the trial court's ruling on his post-conviction petition, the Ohio Court of Appeals did not apply the res judicata bar, as Crank appears to concede in his Traverse (Doc. 26, p. 37).  See also Doc. 10-1, p. 363 (Ohio Court of Appeals stating that Crank's claims are not barred by res judicata).  As for Crank's argument that the trial court violated his due process rights by not providing him with an expert to obtain evidence, such a claim is not cognizable because any alleged errors in post-conviction proceedings are outside the scope of federal habeas review.  *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (a claim that the state court denied the petitioner's opportunity to present evidence in a post-conviction petition is outside the scope of federal habeas review).  Accordingly, Ground 8 is not cognizable.

### IV. Conclusion and Recommendation

For the reasons explained above, the undersigned recommends that Crank's habeas

Petition be **DENIED** because Grounds Five and Eight are not cognizable and the remaining

grounds fail on the merits.


Dated: March 12, 2018

_Kathleen B. Burke_
Kathleen B. Burke
United States Magistrate Judge




### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after the party objecting has been served with a copy of this
Report and Recommendation.  Failure to file objections within the specified time may waive the
right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir.
1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).